## Wilder et al. v. Wilder et al.

Dec. 16, 1941.

Henry L. Bryant and James S. Wilson for appellants.

Davis, Gilbert & Edwards and W. J. Stone for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

This case involves a dispute over certain lands in Bell County between two sets of heirs of Sillus Wilder. The appellees were plaintiffs below. The appellee Mary Wilder was the third wife of Sillus. The other appellees are the children of that marriage. The appellants are the children of Sillus by his first wife, Sarah Hoskins Wilder. The lands in question originally belonged to William Hoskins, who was the father of Sillus' first wife, and were acquired by him by title bond from George McGeorge in 1859. Hoskins died intestate prior to 1890, and his several tracts of land descended to his ten children. His widow, Rachel Hoskins, was assigned a dower which included the home place, a part of the property now in dispute. There is proof that Mrs. Hoskins' dower interest covered all, or most, of the inheritance of Sarah Hoskins Wilder and extended over on to the shares of some of the other children. Sillus and his first wife made their home on the property in question, Sillus remaining there until the time of his death about 1933. Some of the appellants have resided on the property all their lives. Mary Wilder lived with Sillus until about a year before his death, when she left him. There is testimony from disinterested witnesses, as well as interested ones, that she claimed no interest in the property prior to the time she left Sillus and that she manifested the same view when she returned for her husband's funeral. There is also testimony from disinterested, as well as interested, witnesses that Sillus said on several occasions that he had only a life interest in the property and that at his death it would go to the children of his first wife.

The appellees make their claims to an interest in the property through certain conveyances made to Sillus, which will be mentioned hereinafter, while the appellants claim all of it through their mother, taking the position that their father, Sillus, had only a life interest in it. Both parties offered several deeds and con-

siderable proof in support of their positions. The trial resulted in a judgment awarding a four-tenths undivided interest in the lands to the appellants, and also adjudging them to be the owners in fee simple of the one-tenth undivided interest inherited by their mother, Sarah Wilder. The appellees were adjudged to be the owners of the other one-half interest in the lands jointly with the appellants, because the appellants inherited from their father as well as their mother, whereas the appellees inherited only from their father.

The record in this case is a somewhat complicated one. It involves numerous deeds, in some of which the descriptions of the land covered are very meager. The plaintiffs filed two amendments to their petition making more specific descriptions of the lands in which they claimed an interest. Two maps have been filed by surveyors; one testifying for the appellees and the other for the appellants. While the maps agree in some respects, they disagree in others. The appellants have filed a carefully prepared brief, setting up their claims to the lands, while no brief has been filed for the appellees. The judgment indicates that the chancellor gave considerable thought to the case, and while we are reluctant to disturb a judgment in such a case we have reached the conclusion that the position of the appellants is well founded; namely, that they are entitled to all of the lands in question.

All, or practically all, of the property in question was included in the title bond executed by George McGeorge to William Hoskins in 1859. We gather from the record that the share of Sarah Hoskins Wilder, who was unmarried at the time her father's lands were divided, included those in controversy. As we have indicated, there is direct proof to this effect, while there is little proof to the contrary. There is proof as to the location of the shares of some of the other children, but not as to that of Sarah. Most of the other children sold their shares soon after the lands were divided. There is no proof that Sarah ever sold her share. We have noted that there was proof that the dower interest of Rachel Hoskins, which included the home place, was so laid out as to cover the share of her unmarried daughter, Sarah, and probably parts of the shares of some of the children.

The deeds under which the appellees claim were executed by some of the heirs of William Hoskins to

Sillus during the year 1890. They covered one-half of the grantors' right, title and interest in the dower of Rachel Hoskins. Fifty dollars per share was the recited consideration in most instances. The appellants attack some of the deeds on several grounds, but we deem it unnecessary to discuss those grounds for reasons hereinafter set forth.

The chancellor based his finding, as we understand it, on the view that these deeds conveyed to Sillus a one-half interest in the dower set aside for Rachel Hoskins. This view is based upon the assumption that the widow's dower did not overlap the shares of any of her children. We have already indicated that we think the proof shows to the contrary.

During the year 1890 the other heirs of William Hoskins, aside from Sarah, executed a deed to "Sillus Wilder's wife" to their interest in the dower of their mother for the recited consideration of $250. The chancellor apparently held that this deed conveyed the property to the then wife of Sillus Wilder (Sarah Hoskins Wilder) to four-tenths interest in the dower. This interest, plus her one-tenth interest, accounts for the other one-half of the dower, which, as we have indicated, the chancellor awarded to the appellants through the inheritance from their mother.

Shortly after the death of his first wife about 1895, Sillus instituted a proceeding as next friend for his four infant children to have the McGeorge heirs execute a deed to them for the property covered by the title bond from George McGeorge to William Hoskins. That action resulted in the execution of such a deed by the commissioner. Sillus seems to have made no claim whatever to an interest in the property at that time, because he had the deed executed to his infant children. A short time afterward Sillus, who was a trustee of the common school district in the neighborhood, and the other trustee filed a condemnation proceeding to have a lot set apart from the land in question for a schoolhouse site. In that action the four infant children, appellants herein, were proceeded against as the sole owners of the property, Sillus making no claim to any of it. In 1909 a railway right of way deed was executed through a part of the property and, in reciting the source of the title, that deed referred to the land as being the same land con-

veyed to the party of the first part by the George Mc-George heirs in 1897.

The appellants also set up the claim of adverse possession. As we have indicated, the record shows that some of them have lived on the property all their lives. We have noted that there is proof that Sillus claimed only a life interest in the property and that the third wife made no claim to an interest in it. The record shows also that none of the appellees made their home on the property after Mary left Sillus in 1932, and that when some of them sought to come upon it after Sillus' death the appellants obtained a judgment against them in a forcible detainer proceeding.

We think all, or practically all, of the lands in question represented Sarah Hoskins Wilder's share in her father's estate. True it is that we have mentioned deeds purporting to convey to Sillus a one-half interest in Rachel Hoskins' dower, and another under which four-tenths of the other half were conveyed to his first wife; but we have also referred to the evidence concerning Sillus' statements as to his having only a life interest in the property, and also the commissioner's deed of 1897 conveying the property to the children of his first wife, as well as two other deeds which referred to the property as belonging to those children. We do not think under the circumstances that Sillus could have made a claim to a one-half interest in the property against the appellants, and naturally those claiming under him can not do so.

Wherefore, the judgment is reversed with directions to set it aside and for the entry of a judgment consistent with this opinion.